Argued March 6, affirmed March 18, 1964

## STATE OF OREGON v. GROSS

390 P. 2d 612

*Kenneth M. Abraham,* Hood River, argued the cause and filed a brief for appellant.

*Robert J. McCrea,* Special Assistant District Attorney, Eugene, argued the cause for respondent. With him on the brief was T. Lester Johnson, District Attorney, Moro.

Before McAllister, Chief Justice, and Sloan, O'Connell, Denecke and Lusk, Justices.

SLOAN, J.

Defendant was charged with first degree murder. He was tried and convicted of manslaughter. The killing occurred in Sherman county. Trial was had in Wasco county upon an order for change of venue. A seriously urged assignment that a motion for a judgment of acquittal should have been allowed requires a review of the evidence.

Death occurred on Easter Sunday in 1963 on a ranch near Wasco. Defendant was a temporary employee on the ranch. The deceased, a man named Finnegan, had been a permanent employee on the ranch. Defendant occupied a small three room house on the ranch referred to as the bunk house. Finnegan, and his family, lived in another home owned by the ranch owner.

On the day before the tragedy defendant had been in Wasco. He returned to the ranch about 1:30 a.m. on April 14. He had with him a friend named Ireland and two unopened fifths and a part of a pint of whiskey. After some additional drinking, the two men retired. Not long after they arose the next morning, Finnegan came to the bunk house. Finnegan and defendant were friendly. They proceeded to drink whiskey, Ireland claimed he drank only beer. Finnegan left the house on at least two occasions to perform chores; the last chore was to move a stallion from a corral to a barn.

Ireland, an eye-witness to the events that followed, testified that when Finnegan returned from the corral he seated himself on the floor in a cross-legged fashion leaning against the wall. The drinking continued. Not long after, Ireland said, Finnegan spat on the floor, defendant warned him not to do it again and Finnegan

again spat on the floor. Ireland swore that defendant then sprang at Finnegan, struck him about the head and neck with "judo" like punches and attempted to pull Finnegan to his feet, continuing to strike him; that Finnegan fell to the floor and did not move again. Ireland testified that defendant kicked at Finnegan after he had fallen to the floor. Both defendant and Ireland shortly realized that Finnegan was dead.

Defendant testified that after he had warned Finnegan not to spit on the floor that Finnegan rose to his feet and profanely challenged defendant to do something about it; that a scuffle followed and Finnegan fell to the floor. Defendant admitted striking some blows against Finnegan's head but claimed the blows were open-handed slaps. Defendant thought Finnegan had been overcome with too much whiskey. Defendant testified that Finnegan had mud on his clothes when he returned from the corral. Other witnesses who later examined the body also mentioned the mud on the clothes. On this evidence defendant argues that Finnegan could have been injured when he moved the stallion. The foregoing is only a resume of the testimony of the event of the death.

An autopsy was performed. The doctor who performed the autopsy testified that death was caused by a "massive subarachnoid hemorrhage with intraventricular hemorrhage." The doctor also described bruised areas about both sides of the head and a small laceration behind one ear. The doctor expressed an opinion that the hemorrhage was caused by trauma and that blows struck by the hand could have caused the hemorrhage.

Another pathologist, who had examined the findings of the autopsy and had heard the testimony con-

cerning the blows struck, testified in behalf of defendant and expressed doubt that the blows could have been the cause of death. He expressed the opinion that this kind of hemorrhage more normally resulted from natural causes. The latter also testified that a hemorrhage of the kind found would not occur until about an hour after the trauma.

■ Defendant's motion for acquittal asserted, *inter alia,* that a jury could not find that the blows were struck with sufficient force to cause death, particularly within the time span between the striking of the blows and the almost instantaneous death.

Examination of the record and the authorities cited convince us that it was necessary for the jury to assess the evidence. We have mentioned some of the conflicts, but not all, in the testimony regarding the scuffle and in the professional evidence. It is not for a court to resolve these conflicts and it was for the jury to decide if the blows did or did not cause death. We cannot agree that the jury was left to speculate. *State v. Dennis,* 1945, 177 Or 73, 159 P2d 838, 161 P2d 670, and *Henderson v. U. P. R. R. Co.,* 1950, 189 Or 145, 219 P2d 170, relied on by defendant, do not overcome our conviction. In the instant case the evidence of the blows struck was direct, not circumstantial. The doctor's testimony was supported by facts disclosed to the doctor by the autopsy examination. The assignment cannot prevail.

■ Another assignment claims error because the court denied a motion to strike the entire testimony of the doctor who performed the autopsy. The assignment has no merit. No successful objection could have been made to the doctor's qualifications. The value of the testimony was for the jury.

■ We mention a further assignment only for the purpose of completing the record. The judgment roll discloses that after the appeal had been perfected that defendant addressed a motion and affidavits to the trial court requesting a change of counsel. Defendant made the absurd charge that counsel was not competent. The motion was denied by the court but counsel was impelled to include the charge in the brief filed here. Defendant's claim was impertinent. The record shows that counsel investigated and tried the case with a high degree of skill, thoroughness and ability. This appeal has been presented to the hilt. We reluctantly mention this reference to able counsel only to set the record straight in respect to any further attempt to renew the claim.

Affirmed.